**.DAVID J. HOLDSWORTH (4052)**
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| ASHTIN MARKOWSKI, | : | **FIRST AMENDED COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BRIGHAM YOUNG UNIVERSITY, | : | Civil No.: 2:20-cv-000872-JNP |
| | : | |
| Defendant. | : | Hon. Jill N. Parish |

COMES NOW the Plaintiff, Ashtin Markowski, files this First Amended Complaint, complains of Defendant Brigham Young University, demands trial by jury and as and for causes of action alleges as follows:

**JURISDICTION**

1.     This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, for discrimination in employment and for retaliation. Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 2000 e (5).

Equitable and other relief are also sought under 42 U.S.C. § 2000 e (5) (g). Jurisdiction is also based on 28 U.S.C. §§ 1331, 1332 and 42 U.S.C. § 1981, et. seq.

## PARTIES

2.  Plaintiff Ashtin Markowski is a citizen of the United States and, at all times relevant hereto, was a resident of the State of Utah, and an "employee" of Bergan Young University, within the meaning of Title VII.

3.  Defendant Brigham Young University is an "employer" within the meaning of Title VII which does business in Utah County in the State of Utah.

## STATEMENT OF FACTS

4.  At all times relevant hereto, Ms. Markowski worked for Brigham Young University (hereinafter sometimes referred to as "BYU" or the "University"). She actually worked as a trainer in the online teaching center at The Church of Jesus Christ of Latter-day Saints' (hereinafter sometimes referred to as the "Church") Missionary Training Center (hereinafter sometimes referred to as the "MTC"), but was considered to be employed by BYU and was paid for her work by BYU.

5.  Ms. Markowski began working in this position on November 6, 2017.

6.  In her position, Ms. Markowski worked primarily in the training of full-time missionaries who were passing through the MTC in the handling of

incoming online inquiries and traffic of persons interested in The Church of Jesus Christ of Latter-day Saints. Secondarily, she also worked in the training of full-time missionaries who were serving in the "field".

      7.      As an employee of BYUI, Ms. Markowski was obligated to comply with certain grooming and dress standards.  Such standards included guidelines that employees' hairstyles were not to be extreme and distracting.

      8.      At all times relevant hereto, Ms. Markowski reported to Audrey Simonson (hereinafter referred to as "Ms. Simonson"), who, in turn, reported to Taylor Godfrey (hereinafter referred to as "Mr. Godfrey"), Ms. Simonson's supervisor.

      9.      On April 3, 2020, Ms. Markowski cut her hair so that it was quite short.

      10.      Approximately six weeks later, on May 14, 2020, Ms. Markowski's management at BYU informed her that it considered her haircut to be extreme and distracting, that it was "not feminine enough" and "was too masculine". Her management also told her that her eyebrows were "too firm".

      11.      Ms. Markwski communicated to her management at BYU that, although she did not agree with this assessment of her haircut/hairstyle, she didn't want to cause a problem and would be happy to comply with their directions and so, she would let her hair grow out.  Ms. Markowski also pointed out to her management that

3

she felt that BYU was imposing a double standard in that it allowed male employees who worked at the MTC to bleach their hair and have eyebrow slits, but were not allowing her to wear short hair or have "firm" eyebrows.  Ms. Markowski clearly communicated to BYU that she did not want this situation to jeopardize her continued employment with BYU and so she indicated she would comply with management's direction.

12. The next day, May 15, 2020, management had a meeting with Ms. Markowski.  In the meeting, management informed Ms. Markowski that, in her interpretation of the University's policy on grooming standards, she had "shown a lack of judgment" and that it was best if the University and she parted ways.  In other words, BYU terminated Ms. Markowski's employment for cutting her hair and wearing her hair in a way which management deemed not "feminine enough" and "too masculine".

13. After being fired, Ms. Markowski filed a Charge of Discrimination with the EEOC, Charge No. 540-2020-03281.

14. On September 22, 2020, the EEOC issued Ms. Markowski a Dismissal and Notice of Right to Sue (a "Right to Sue" letter).  Ms. Markowski received said right to sue letter on approximately September 25, 2020.

15. Ms. Markowski sought to file this civil action within 90 days of her receipt of said Notice of Right to Sue letter.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DISCRIMINATION ON THE BASIS OF SEX

16. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 15 above as if alleged in full herein.

17. Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against employees on the basis of "sex". The Supreme Court has expanded the definition of "sex" in Title VII to include sexual stereotyping, sexual orientation, and other factors related to sex and gender.

18. Ms. Markowski alleges that the particular circumstances of her case do not bring her case within the religious exemption to Title VII.

19. She alleges that her claim of discrimination in employment on the basis of sex will not jeopardize BYU's or the MTC's or the LDS Church's ability to create and maintain communities composed solely of individuals faithful to the doctrines and practices of the LDS Church. She alleges her former hairstyle at issue had nothing to do with doctrine or practices of the LDS Church.

20. Ms. Markowski also alleges that her claim of discrimination in employment does not strike at the heart of BYU's authority to interpret and enforce

doctrinally-based standards and maintain a community that is faithful to the LDS Church's doctrine and practices.

   21. Ms. Markowski also alleges that the particular circumstances of her case do not bring her claims within the statutory exemption/ministerial exception to Title VII.  *See* 42 U.S.C. § 2000e-1 (a) and 42 U.S.C. § 2000e-2 (e) (2).  *See, generally, Employment Division, Dpt. Of Human Resources of Oregon, v. Smith,* 494 U.S. 872 (1990), *Hosanna-Tabor Evangelical Lutheran Church and School v. Equal Employment Opportunity Commission,* 565 U.S. 171 (2012), and *Our Lady of Guadalupe School v. Morrissey-Berry,* (July 8, 2020).  She alleges such circumstances include, but are not limited to, the following facts and factors:

   (a) she was a student at BYU;

   (b) she was a part-time employee;

   (c) she was not the head of a congregation;

   (d) she did not hold the title of minister;

   (e) she was not a missionary or a full-time missionary;

   (f) she did not preach from the pulpit or lead a congregation in prayer;

   (g) she did not teach religious studies or theology;

   (h) she did not deliver messages based on scripture passages;

(i) she did not lead devotional exercises;

(j) she was not responsible for teaching or educating students or full-time missionaries in the faith;

(k) she was not responsible for guiding students or full-time missionaries, by word and deed, toward the goal of living their lives in accordance with the faith;

(l) her primary duty was training and supporting full-time missionaries who were passing through the MTC in the technology and techniques handling of incoming online inquiries and traffic of persons interested in The Church of Jesus Christ of Latter-day Saints and training and supporting full-time missionaries in the same technologies and techniques who were serving in the field;

(m) although Ms. Markowski is an "active" member of The LDS Church and did have a role in carrying out The LDS Church's mission by training full-time missionaries on <u>how to</u> properly use social media so as to convey the Church's message, she did not generally use The Church's online presence or social medial for proselyting and had no responsibility for the spiritual welfare of the full-time missionaries.

22. Thus, Ms. Markowski alleges her position at BYU was more administrative than spiritual, more technical than ministerial and, thus, does fall outside of the statutory exemption/ministerial exception to Title VII.

23. BYU asserts that Ms. Markowski was an employee at will, that BYU could terminate her employment at any time, other than for [a reason or] reasons prohibited by law.

24. Ms. Markowski alleges that BYU terminated her for a reason prohibited by law, and, therefore, discriminated against Ms. Markowski in her employment based on her gender.

25. Ms. Markowski alleges the facts state a prima facie case of discrimination based on sex.

26. Ms. Markowski is a female, and, therefore, a member of a protected class.

27. Ms. Markowski was qualified for and performing her job in a satisfactory manner.

28. BYU may assert that, because, on a prior occasion during her employment, she allegedly acted inappropriately and it disciplined her, she was not performing her job in a satisfactory manner.

29. Ms. Markowski alleges she has the right to voice her opinion and that, after receiving the discipline referred to above, she did not act allegedly inappropriately ever again.

30. Ms. Markowski alleges that, on May 15, 2020, BYU took materially adverse action against her in that it terminated her employment.

31. Ms. Markowski alleges that the circumstances leading up to the termination support an inference that BYU took the adverse action against her because of her membership in a protected class — namely, her gender.

32. There is no dispute whether Ms. Markowski's hair was clean and neat; the issue is whether her particular haircut/hairstyle was "extreme".

33. A passage in an LDS Church magazine (known as the *"Liahona"* recognizes that extreme hairstyles might be distracting, but does not define exactly what hairstyles are too extreme.

> "Extreme hairstyles <u>might</u> overshadow the message and send a [different and] more worldly message about you" (*emphasis added*).

34. In support of this proposition, Ms. Markowski also alleges BYU did not treat similarly situated male employees who wear extreme hairstyles similarly and, in fact, allowed male employees and trainers who wore bleached hair to remain employed.

35. Ms. Markowski alleges that BYU has acknowledged that it generally follows a policy of industrial due process and progressive discipline.

36. Ms. Markowski alleges that BYU failed to follow such a policy in the case of her hairstyle and the resulting termination.

37. Ms. Markowski also alleges that BYU's explanation for terminating her employment is pretextual in that, among other things: (1) the issue of whether Ms. Markowski's hairstyle was "extreme" was subjective; (2) BYU represents to employees that it is going to follow the Administrative Staff Employee Discipline Procedures (which provide for progressive discipline), and did so in dealing with Ms. Markowski's alleged outburst and complaints she made earlier in 2020, but did not follow it in the instant situation; and (3) that, after her management notified her of its concern with her hairstyle, and Ms. Markowski stated that she had not intended to violate any dress and grooming standards and would comply with the direction her management was giving her, her managers, nevertheless, proceeded to terminate her employment.

38. Such allegations demonstrate that the adverse employment action at issue occurred under circumstances which give rise to an inference that BYU terminated her employment because she was a female in that her management asserted that her hairstyle was not "feminine enough" and was "too masculine".

39. Ms. Markowski's allegations state a prima facie case of discrimination based on sex and support an inference that BYU unlawfully discriminated against her based on her sex.

## SECOND CAUSE OF ACTION
## RETALIATION

40. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 39 above as if alleged in full herein.

41. Ms. Markowski alleges the facts, as summarized above, state a prima facie case of retaliation in that:

(b) on May 14, 2020, she engaged in protected activity when she complained to her management that, although she did not believe she had violated any grooming and dress standards and that she intended to comply with her management's direction to her to grow her hair out, she believed BYU was applying a double standard in that it deemed her hairstyle "extreme", but allowed male employees to wear bleached hair;

(c) immediately after Ms. Markowski made such a complaint, BYU terminated her employment;

(d) the circumstances, including, but not limited to, the temporal proximity between her complaint on May 14, 2020 and her termination on May 15, 2020, despite her clear communication of her intent to comply with

her management's directive to grow her hair out, support an inference of a causal connection between her protected activity and the adverse employment action.

42. Ms. Markowski also alleges that the circumstances support an inference that BYU's reason for the adverse action is pretextual.

43. Ms. Markowski also alleges that BYU's explanation is pretextual in that, among other things: (1) the issue of whether Ms. Markowski's hairstyle was "extreme" was subjective; (2) BYU represents to employees that BYU is going to follow the Administrative Staff Employee Discipline Procedures (which provide for progressive discipline), and did so in dealing with Ms. Markowski's alleged outburst and complaints she made earlier in 2020, but did not follow it in the instant situation; and (3) that, after management notified her of its concern with her hairstyle, and Ms. Markowski stated that she had not intended to violate any dress and grooming standards and would comply with the direction her management was giving her, her managers, nevertheless, proceeded to terminate her employment.

44. Such allegations demonstrate that the adverse employment action at issue occurred under circumstances which give rise to an inference that BYU terminated her employment because she had engaged in protected activity.

45. Ms. Markowski's allegations state a prima facie case of retaliation and support an inference that BYU unlawfully retaliated against her based on her protected activity.

## DAMAGES

46. Ms. Markowski alleges BYU's actions and inactions have caused her damages in that its adverse actions have caused her to lose her job and her ability to earn wages, receive benefits, have damaged her employability, have caused her to feel feelings of frustration, unfairness and betrayal, and caused other types of financial stress and emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, based on the allegations set forth above and the evidence to be produced, discovered and otherwise adduced in support of her claims, Ms. Markowski prays for judgment:

1. Declaring that Defendant BYU's actions and inactions have violated Title VII;

2. Awarding Ms. Markowski her lost wages and the value of her lost benefits from the time BYU terminated her employment until it reinstates her, or until she finds comparable employment;

3. Awarding Ms. Markowski damages for financial stress, emotional distress and other damages in an amount to be proven at trial;

4. Awarding her reasonable attorneys fees and costs;

5. Awarding her such other and further relief as the Court finds just and equitable.

DATED this 15th day of February, 2021.

    */s/ David J. Holdsworth*
David J. Holdsworth
*Attorney for Plaintiff*

## VERIFICATION

Ashtin Markowski, being first duly sworn, upon her oath, deposes and says that she is the Plaintiff in the above-entitled action, that she helped prepare and has read the foregoing FIRST AMENDED COMPLAINT and understands the contents thereof, and the statements made therein are true to the best of her knowledge and recollection.

                                                                            */s/ Ashtin Markowski*
                                                                            Ashtin Markowski

SUBSCRIBED AND SWORN to before me, a Notary Public, this \_\_\_\_ day of _____, 20\_\_\_.

                                                                     _____
                                                                     NOTARY PUBLIC

MY COMMISSION EXPIRES:        RESIDING AT: _____

                                                                     _____