FILED
2022 FEB 10 AM 8:38
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ASHTIN MARKOWSKI,<br><br>Plaintiff,<br><br>v.<br><br>BRIGHAM YOUNG UNIVERSITY,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:20-cv-00872-JNP-CMR<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Cecilia M. Romero |

Before the court is a motion for summary judgment filed by Defendant Brigham Young University ("BYU") [ECF No. 11]. The court held oral argument on the motion on Feburary 8, 2022. At the conclusion of the hearing, the court took the motion under advisement. After considering the written submissions and the arguments presented at the hearing, the court GRANTS BYU's motion for summary judgment.

## FACTUAL BACKGROUND

The Church of Jesus Christ of Latter-day Saints ("the Church") is a religious organization with its headquarters in Utah. One of the Church's "most recognized characteristics" is its missionary program. ECF No. 12-1, at 2. Church members, typically under the age of twenty-five, can serve a mission for eighteen to twenty-four months, during which they share the teachings of Jesus Christ and the Church. Prior to beginning their mission, future missionaries spend a short period of time at a Missionary Training Center to learn how to effectively teach Church doctrine.

BYU is a university "founded, supported, and guided by The Church of Jesus Christ of Latter-day Saints." ECF No. 12-5, at 2. BYU's mission includes "making its resources available to the Church when called upon to do so." *Id.* As part of this mission, BYU operates a Missionary Training Center ("MTC") in Provo, Utah. The MTC employs many BYU students who assist in preparing missionaries for their missions.

On November 6, 2017, BYU hired Plaintiff Ashtin Markowski ("Markowski") as a trainer at the MTC's Online Teaching Center. Markowski trained full-time missionaries in how to respond to online inquiries about the Church and how to use their social media to have discussions with people interested in learning more about the Church. Markowski also piloted new online engagement projects.

All MTC employees, including Markowski, must comply with the Church's Missionary Dress and Grooming Standards. On April 3, 2020, Markowski cut her hair short. Six weeks later, Markowski's supervisors informed her that they considered her haircut to be extreme and distracting. Her supervisors informed her that her haircut was "not feminine enough" and "was too masculine." ECF No. 7 ¶ 10. They also complained that her eyebrows were "too firm." *Id.* Markowski indicated that she did not want her haircut to jeopardize her ability to work at the MTC and agreed to grow her hair out. The next day, Markowski's supervisors fired her.

Markowski filed a complaint with the EEOC and the EEOC issued Markowski a Right to Sue Letter. Markowski brings two claims in this court. First, Markowski accuses BYU of sex discrimination in violation of Title VII. Second, Markowski also claims that BYU retaliated against her for complaining to supervisors that BYU applied a double standard in deeming her hairstyle "extreme" while allowing male employees to wear bleached hair.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). When applying the summary judgment standard, the court must "view the evidence and make all reasonable inferences in the light most favorable to the nonmoving party." *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

## ANALYSIS

BYU argues that Markowski qualifies as a "minister" and, as such, the ministerial exception to Title VII bars Markowski's action. Additionally, BYU argues that Markowski's retaliation claim independently fails because she did not raise it with the EEOC. Markowski acknowledges that she is "swimming against the current of some strong precedent." ECF No. 13, at 2. Nevertheless, she contends that the totality of the circumstances raise genuine issues of material fact as to whether she qualifies as a "minister" subject to the ministerial exception. The court sides with BYU.

### I. THE MINISTERIAL EXCEPTION

Title VII bars discrimination on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). Discrimination on the basis of sex includes "failing to fulfill traditional sex stereotypes." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1742-43 (2020); *see also Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978) ("In forbidding employers to discriminate against individuals because of their sex,

Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes." (citation omitted)). The parties do not openly dispute that BYU discharged Markowski for failing to fulfill traditional sex stereotypes.

Rather, resolution of this motion depends on whether the ministerial exception applies to bar application of Title VII to Markowski's termination.[1] The Supreme Court first recognized a "ministerial exception" barring certain federal employment discrimination claims against religious institutions[2] in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171 (2012). Specifically, the Supreme Court held that anti-discrimination employment law does not govern religious institutions' employment decisions regarding ministers. *Id.* at 188-89.

The Supreme Court grounded the ministerial exception in both the Free Exercise Clause and the Establishment Clause of the United States Constitution. "By imposing an unwanted minister, the state infringes the Free Exercise Clause, which protects a religious group's right to shape its own faith and mission through its appointments." *Id.* at 188. And "[a]ccording the state the power to determine which individuals will minister to the faithful also violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions." *Id.* at 188-89. At bottom, the Supreme Court held that "[r]equiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so . . . interferes with the internal

---

[1] Summary judgment provides an appropriate vehicle for determining whether the ministerial exception applies in this case. The ministerial exception is "an affirmative defense." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 195 n.4 (2012). Generally, affirmative defenses can be resolved on a motion for summary judgment. *See* FED. R. CIV. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.").

[2] Markowski concedes, and the court agrees, that BYU qualifies as a religious institution that may avail itself of the ministerial exception. ECF No. 13, at 25.

governance of the church, depriving the church of control over the selection of those who will personify its beliefs." *Id.* at 188.

But the *Hosanna-Tabor* Court refused to "adopt a rigid formula for deciding when an employee qualifies as a minister." *Id.* at 190. Instead, the Court identified a series of factors that it considered in finding that the *Hosanna-Tabor* plaintiff qualified as a minister. The Court considered that (1) the religious institution gave the employee the title of minister, (2) the employee's position "reflected a significant degree of religious training," (3) the employee "held herself out as a minister," and (4) the employee's "job duties reflected a role in conveying the Church's message and carrying out its mission." *Id.* at 190-92.

The Supreme Court reaffirmed the ministerial exception in *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049 (2020). The Court clarified that the factors considered in *Hosanna-Tabor* were not "inflexible requirements" and, in fact, "may have far less significance in some cases." *Id.* at 2064. Indeed, the Court cautioned lower courts against focusing on the *Hosanna-Tabor* factors as "checklist items to be assessed and weighed against each other in every case." *Id.* at 2067. Instead, the Court instructed lower courts that "[w]hat matters, at bottom, is what an employee does." *Id.* at 2064.

In examining "what an employee does," the Court looked for indications that the plaintiff-teachers performed "vital religious duties." *Id.* at 2066. As evidence that the plaintiff-teachers performed vital religious duties, the *Morrissey-Berru* Court noted the plaintiffs' role in advancing the core school mission of educating students in the Catholic faith and their role in "guid[ing] their students, by word and deed, toward the goal of living their lives in accordance with the faith." *Id.* The Court also emphasized that the plaintiffs "prayed with their students, attended Mass with the students, and prepared the children for their participation in other religious activities." *Id.* The

Court held that the absence of the word "minister" in the teachers' titles was not dispositive, nor was their lack of formal religious education relative to the *Hosanna-Tabor* plaintiff. *Id.* at 2063-65. In sum, the *Morrissey-Berru* Court instructed lower courts to prioritize assessing "what an employee does" against a holistic backdrop, "call[ing] on courts to take all relevant circumstances into account and to determine whether each particular position implicated the fundamental purpose of the exception." *Id.* at 2067.

## II. APPLICATION TO MARKOWSKI'S TERMINATION

In accordance with the Supreme Court's guidance, the court looks to all relevant circumstances, with a strong emphasis on Markowski's actions while on the job. Based upon the undisputed facts, the court concludes that Markowski plainly performed vital religious duties.

First, her actions at work involved advancing the Church's mission by training missionaries. Specifically, both parties agree that Markowski "train[ed] full-time missionaries on how to properly use social media so as to convey the Church's message." ECF No. 13 ¶ 21. Church leaders highlight God's commandment to "take this gospel to all the world" as one of the central tenets of their faith. ECF No. 12-4, at 4. As such, preparing missionaries to convey the Church's message via social media is essential to carrying out the Church's mission in the modern world. Indeed, in much the same way that the plaintiff-teachers in *Morrissey-Berru* "prepared the children for their participation in other religious activities," 140 S. Ct. at 2066, Markowski prepared current and future missionaries for participation in their Church missions—a religious activity that is central to the Church's mission. *See* ECF No. 13 ¶ 11 ("Ms. Markowski's job was to train missionaries in how those missionaries could use the internet and social media to have discussions with persons interested in learning more about the Gospel of Jesus Christ and the Church of Jesus Christ of Latter-day Saints.").

Second, the undisputed evidence demonstrates that Markowski directly instructed prospective members on the Church's teachings while on the job. And just as "educating young people in their faith, inculcating its teachings, and training them to live their faith are responsibilities that lie at the very core of the mission of a private religious school," *Morrissey-Berru*, 140 S.Ct. at 2064, educating prospective members and imparting the Church's teachings to potential members are responsibilities that lie at the very core of the mission of the Church and its MTC. Indeed, according to Church founder Joseph Smith, "[a]fter all that has been said, the greatest and most important duty is to preach the Gospel." ECF No. 12-4, at 14. Markowski does not dispute that "[a]s part of her employment, [she] also acted as a moderator on the Church's Come Unto Christ Facebook page, and she had administrator access to communicate on behalf of the Church with other Facebook users on this page using the Facebook messenger feature." ECF No. 13 ¶ 25. BYU provides evidence—and Markowski does not dispute the evidence—that while acting as a moderator as part of her employment, Markowski prayed with potential members, explained essential religious doctrine such as the path to salvation to potential members, and shared her personal faith with potential members. ECF No. 13 ¶ 25; *see also Morrissey-Berru*, 140 S. Ct. at 2066 (noting that plaintiff-teachers "prayed with their students"). Indeed, one of the moderator group goals that BYU hired Markowski to advance was to "help each [Facebook group] member have a minister who can watch over them." ECF No. 12-11, at 2.

BYU also submits further evidence, which Markowski disputes, that Markowski engaged in teaching religious doctrine as part of her job. Specifically, BYU submits several pages of social media chats that show Markowski using the Church's chat system to teach potential members about Church doctrine. ECF No. 13 ¶ 23; *see also* ECF No. 12-21, at 10 ("We believe that, thanks to Jesus Christ, we are all saved! He has paid the price for all of us. However, we still need to keep

the commandments and repent so we can continue to progress and become better people."); *id.* at 11 ("Sometimes answers to prayers take a while. They may not be instant like you want it to be, but Heavenly Father really does hear and answers you."). Markowski does not contend that someone else wrote the chats or otherwise question the veracity of the chats submitted by BYU. Instead, she argues that the record does not establish whether she taught prospective members as part of her employment or on her own time. But Markowski has submitted no evidence in support of her contention that she did not engage in religious teaching on the job. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). Even considering the evidence in the light most favorable to Markowski, there is no genuine issue of fact as to whether Markowski taught religious doctrine as part of her job. She undoubtedly did. Markowski herself stated under penalty of perjury (in another lawsuit) that she "had an on-campus job at the Missionary Training Center where I . . . taught people about our church online." ECF No. 12-27 ¶ 11. Such an unequivocal declaration—absent any evidence to the contrary—speaks for itself.

The court need not engage in any further analysis. Because the Supreme Court has instructed that "[w]hat matters, at bottom, is what an employee does"—and Markowski's actions alone make clear that she played a vital role in advancing the religious mission of BYU—her claim fails under the ministerial exception. But were the court to look beyond Markowski's actions to the non-exhaustive factors listed in *Hosanna-Tabor*, it would reach the same conclusion. The job duties for Markowski's position were explicitly religious in nature and reflected a role in conveying the Church's message and carrying out its mission. The duties include "invit[ing] all to come unto Christ and help[ing] missionaries to effectively do the same" as well as "help[ing]

interested individuals [come] closer to Christ and [helping] missionaries understand and apply their purpose." ECF No. 13 ¶ 16. Moreover, Markowski's position required significant religious training. Employment at the MTC required service of an eighteen-month mission, including the related religious training encompassed in every mission, prior to hire. And Markowski's job required her to spend thirty minutes before each of her shifts preparing for work, including by studying the Book of Mormon. ECF No. 12-17, at 2. Finally, Markowski has expressly held out that part of her job included teaching people about the Church's doctrine. ECF No. 12-27 ¶ 11 ("I had an on-campus job at the Missionary Training Center where I . . . taught people about our church online."). Accordingly, the *Hosanna-Tabor* factors further support application of the ministerial exception.

In conclusion, as the Supreme Court has noted that "the First Amendment . . . gives special solicitude to the rights of religious organizations." *Hosanna-Tabor*, 565 U.S. at 189. Here, that special solicitude prevents Markowski from pursing her claims of sex discrimination and retaliation.[3]

**CONCLUSION**

The court GRANTS BYU's motion for summary judgment.

DATED February 10, 2022.

BY THE COURT

Jill N. Parrish
United States District Court Judge

[3] Because the court determines that the ministerial exception applies, it need not reach the issue of administrative exhaustion.